1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LINDA KAY LINNE,

         Plaintiff,

  v.

ALAMEDA HEALTH SYSTEM,

         Defendant.

Case No. 22-cv-04981-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

In this action, *pro se* Plaintiff Linda Kay Linne asserts claims of discrimination and retaliation against her former employer Defendant Alameda Health System, pursuant to the Americans with Disabilities Act (ADA) and ADA Amendments Act of 2008 (ADAAA). Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), claiming the complaint does not allege an actionable claim.

Pursuant to Civil Local Rule 7-1(b), Defendant's motion to dismiss is suitable for disposition without oral argument; the hearing set for January 26, 2023 is therefore vacated. For the reasons discussed below—including Plaintiff's failure to plead a claim based on a disability as defined under the ADA—the motion to dismiss is granted, with leave to amend.

## II. BACKGROUND[1]

Plaintiff, a respiratory therapist, was employed with Defendant from 1992 until November 4, 2021, when she was terminated for noncompliance with Defendant's COVID policy. Defendant began to adopt such policies, such as requiring that employees wear surgical masks, take vaccines, and social distance and quarantine, among others, in March of 2020. On July 20, 2021, Plaintiff received an email from Defendant's "Restoration and Oversite Committee," explaining that Plaintiff was required to be vaccinated and to wear eye-protection. On August 3, 2021, Plaintiff received an email from Defendant's CEO, requiring her to "submit to medical examinations and other treatments" by August 23, 2021. Dkt. 1 at 4. Plaintiff expressed her refusal to get the COVID vaccine and flu shots. On August 13, 2021, she received another email demanding compliance with full vaccination status by September 30, 2021, unless Plaintiff had a religious or medical exemption. Plaintiff submitted a religious exemption letter on August 20, 2021. Plaintiff received yet more emails on August 24, 25, and 31, some of which stated that "[a]ny employee who refuses to comply with this [vaccination] order will be taken off the schedule without pay and will face discipline up to and including termination." Dkt. 1 at 5.

Although she attempted to "revoke[ her] request for a religious exemption," Dkt. 1 at 21, the exemption was granted, which permitted Plaintiff to continue her employment so long as she complied with twice weekly COVID testing. Because of her refusal to comply, she was terminated. Based on these facts, Plaintiff asserts claims for discrimination and retaliation under the ADA.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the complaint. A complaint must contain "a short and plain statement of the claim showing that the

---

[1] The factual background is based on the well-pled allegations in the complaint, which we take as true for the purposes of this motion. However, Plaintiff also makes reference to an "amended complaint" in her Opposition, but as Defendant correctly notes, there is no record of such a filing on the docket. As such, references to material not contained in the Complaint cannot be considered here. As Plaintiff will be given leave to amend, she may use that opportunity to ensure that her desired amendments are properly filed.

1   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not

2   required, a complaint must have sufficient factual allegations to state a claim that is "plausible on

3   its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544,

4   555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that

5   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

6   alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

7        Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal

8   theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See*

9   *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and

10  citation omitted). When evaluating such a motion, the court must accept all material allegations in

11  the complaint as true and construe them in the light most favorable to the non-moving party. *In re*

12  *Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

13       When dismissing a complaint, leave to amend must be granted unless it is clear that the

14  complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrections*, 66 F.3d

15  245, 248 (9th Cir. 1995). "A document filed *pro se* is to be liberally construed, and a *pro se*

16  complaint, however inartfully pleaded, must be held to less stringent standards than formal

17  pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v.*

18  *Gamble*, 429 U.S. 97, 106 (1976)).

19                              **IV. DISCUSSION**

20       As the legal standard articulated above makes clear, a complaint must state facts sufficient

21  to support the inference of a plausible claim for relief. Here, even under the relaxed standard

22  applied to pleadings filed by *pro se* litigants, plaintiff's complaint falls short of that standard for

23  both her discrimination and retaliation claims.

24       **A.  ADA Discrimination**

25       Employers are prohibited by the ADA from discriminating "against a qualified individual

26  with a disability because of the disability." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246

27  (9th Cir. 1999) (citing 42 U.S.C. § 12112(a)). For Plaintiff to state a claim under the ADA, she

28

United States District Court
Northern District of California

ORDER GRANTING MOTION TO DISMISS
CASE NO. 22-cv-04981-RS

3

1    must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified

2    individual, meaning she can perform the essential functions of her job; and (3) Defendant

3    terminated her because of her disability. *Id.* Plaintiff fails to make the requisite showing for the

4    first and third elements—that is, that she is a disabled person *within the meaning of the ADA*, and

5    that she was terminated *because of a disability within the meaning of the ADA*.

6         Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment

7    that substantially limits one or more major life activities of such individual; (B) a record of such

8    an impairment; or (C) being regarded as having such an impairment (as described in paragraph

9    (3))." 42 U.S.C. § 12102(1). Plaintiff's claims fall short in that she does not allege any kind of

10   disability that falls under the scope of ADA protection. First, as Defendant notes, Plaintiff does

11   not claim any actual impairment giving rise to a disability under 42 U.S.C. § 12102(1)(A). Indeed,

12   in her Opposition, Plaintiff effectively argues that actually having a disability is irrelevant to her

13   claim, which instead proceeds on the theory that *Defendant perceived* that she had a disability—

14   or, in other words, on the third, "regarded as" prong in 42 U.S.C. § 12102(1)(C).

15        Yet Plaintiff's appeal to this prong fares no better. Employees cannot bring claims for

16   being regarded as having an impairment that is "transitory and minor," defined as "an impairment

17   with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). With this in

18   mind, courts "generally agree that a COVID-19 infection is not a disability," because it is

19   "generally transitory." *Lundstrom v. Contra Costa Health Services*, 2022 WL 17330842 at *5

20   (N.D. Cal. Nov. 29, 2022) (citing cases holding that COVID infections do not meet the ADA's

21   definition of disability, including *Roman v. Hertz Local Edition Corp.*, 2022 WL 1541865, at *7

22   (S.D. Cal. May 16, 2022); *McCone v. Exela Techs., Inc.*, 2022 WL 801772, at *4 (M.D. Fla. Jan.

23   14, 2022); and *Thompson v. City of Tualatin*, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022)

24   (finding that "being perceived as having COVID-19 is not a cognizable disability under the

25   ADA")). Plaintiff therefore fails to show that she is disabled within the meaning of the ADA,

United States District Court
Northern District of California

United States District Court
Northern District of California

1   despite her conclusory declarations to the contrary.[2] Although Plaintiff claims that Defendant

2   "employed its policies and procedures to harass, isolate, segregate, limit, classify, deny equal

3   access and impose non-job-related medical exams and other medical treatments upon plaintiff,"

4   these are again merely conclusory statements; there is nothing inherent in a policy equally

5   instituting COVID protections to employees that is naturally harassing, and Plaintiff does not

6   allege any facts upon which to conclude otherwise.

7       To the extent that Plaintiff maintains that the mere fact of instituting any kind of COVID

8   mitigation policy constitutes discrimination under the ADA, Plaintiff may never be able to state an

9   actionable claim. But, to afford her the liberality customarily extended to *pro se* litigants,

10  Plaintiff's discrimination claim is dismissed with leave to amend.

11      **B.  Retaliation**

12      The ADA also provides that "[n]o person shall discriminate against any individual because

13  such individual has opposed any act or practice made unlawful by this chapter or because such

14  individual made a charge, testified, assisted, or participated in any manner in an investigation,

15  proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). For Plaintiff to advance a case

16  for retaliation, she must show that (1) she engaged in a protected activity, (2) she suffered an

17  adverse employment action, and (3) there was a causal link between the protected activity and the

18  adverse employment action. *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir.

19  2004). Plaintiff here has neither alleged sufficient facts to show she engaged in protected activity

20  related to a disability, nor plausibly alleged that there was a causal connection between her alleged

21  protected activity and her termination.

22  _____

23  [2] Plaintiff claims that she gave notice to Defendant that she was regarded as having a disability on
    September 30, 2021, which made her part of a protected class. Plaintiff also claims that she
24  "identified herself as being within a protected group and engaged in a protected activity upon
    giving the defendant notice that she was regarded as having a disability." Dkt. 1 at 12. Plaintiff is
25  mistaken, however, in her belief that COVID precautions instituted to protect public health
    translate into a belief or perception that all people are disabled. For the reasons articulated above, a
26  conclusory declaration that Plaintiff is disabled—and even a claim of disability predicated on the
    possibility that she could have, or is perceived to have, COVID—is insufficient to state a claim
27  under the ADA.

28

Plaintiff claims that Defendant retaliated against her by "seeking to impose its so-called 'Covid' policy . . . just like it had before receiving plaintiff's notice of disability," Dkt. 1 at 13, and ultimately terminating her because she claimed "protected opposition status" to Defendant's policy, which likely refers to Plaintiff's repeated refusal to comply with the vaccination and testing requirements. Indeed, Plaintiff alleges she "expressed her opposition in a number of ways," Dkt. 10 at 5, including filing an EEOC complaint, refusing all mitigation measures, and describing Defendant's policy as illegal and illegitimate.

Protected activity generally either challenges a violation of the ADA, or requests a remedy authorized by it, *see Lundstrom*, 2022 WL 17330842, at *6 (citing 42 U.S.C. § 12203(a)), but Plaintiff has not described a situation concerning a disability as defined under the ADA, much less shown an ADA violation. Even if it were assumed that a COVID infection (or being regarded as potentially having one) were a disability, and Plaintiff's non-compliance was protected opposition under the ADA, Plaintiff's claim still merely indicates that Defendant was seeking to enforce its policy. As the policy predated Plaintiff's allegedly protected activity, and was applied equally to all of Defendant's employees regardless of whether they had the virus, it is therefore "unreasonable to infer that there was a causal connection between [Plaintiff's] criticism of [Defendant's] policies and her termination." *Lundstrom*, 2022 WL 17330842, at *6 (citations omitted). These were not actions that Defendant undertook deliberately to aim at Plaintiff on the basis of her criticism of the policy. As Plaintiff acknowledges, Defendant clearly communicated that "*[a]ny* employee who refuses to comply with this [vaccination] order will be taken off the schedule without pay and will face discipline up to and including termination." Dkt. 1 at 5 (emphasis added). She thus fails to demonstrate the requisite causal connection for a retaliation claim.

Even if it were assumed, one step further, that Plaintiff did present a *prima facie* case of retaliation, Defendant had legitimate, non-retaliatory reasons for maintaining consequences for noncompliance, which were "based on the employees' vaccination status, not whether or not [the employees] applied for an exemption (and not on their religion or disability)." *Together Emps. v.*

*Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 444 (D. Mass. 2021); *see also O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1312 (D. Haw. 2022) ("Even if Plaintiff could establish a prima facie case of retaliation, the Defendant has already offered a non-discriminatory reason for its action — namely, to prevent the spread of COVID-19 among its workforce.") (quoting *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1112 n.5 (D. Colo. 2021)). Contrary to Plaintiff's assertions, the ADA does not furnish a right to refuse compliance with a policy "based upon a good faith belief that the policy d[oes] not apply." Dkt. 1 at 14. As a result, the emails warning of suspension and the eventual termination are not enough for Plaintiff to have stated a claim for retaliation under the ADA.

## V. CONCLUSION

Plaintiff's claims for discrimination and retaliation are both dismissed, with leave to amend. Accordingly, if Plaintiff elects to file an amended complaint, she must do so within 30 days from the date of this order. Otherwise, the action will be dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: January 24, 2023

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California